## ASSOCIATION OF COURT REPORTERS OF SUPERIOR COURT et al., Plaintiffs,

v.

## SUPERIOR COURT FOR the DISTRICT OF COLUMBIA et al., Defendants.

### Civ. A. No. 76–1277.

United States District Court, District of Columbia.

Dec. 16, 1976.

Philip Hirschkop, Leonard S. Rubenstein, Alexandria, Va., for plaintiffs.

John H. Suda, Asst. Corp. Counsel, Washington, D. C., for defendants.

## MEMORANDUM OPINION

PARKER, District Judge.

This case involves a labor dispute in the local District of Columbia courts. An unincorporated association of court reporters, its officers and various individual reporters have brought this suit as a class action against their employers, the Superior Court of the District of Columbia, the Chief Judge of that court and of the District of Columbia Court of Appeals, the Joint Committee on Judicial Administration (Joint Committee) [1] and certain management personnel of the courts. Generally, plaintiffs complain of overwork, inadequate compensation for services rendered and on-the-job harassment. Jurisdiction is alleged pursuant to 28 U.S.C. § 1331 (federal question), § 1337 (Acts of Congress regulating commerce) and § 1361 (mandamus); the Fair Labor Standards Act (FLSA or Act), 29 U.S.C. § 216(b); and, the First and Fifth Amendments. Pendent jurisdiction is asserted over issues arising from claims based upon local law.

The plaintiffs seek declaratory and injunctive relief, money damages and attorneys' fees and in their unverified complaint charge: Count I, that the plaintiffs are not compensated at overtime rates as required by the provisions of the Fair Labor Standards Act; Count II, that the defendants, in requiring plaintiffs to produce transcripts of proceedings for judges without charge, violate their Fifth and Fourteenth Amendment rights; Count III, that First Amendment rights are violated in that they are intimidated, harassed and thwarted in their attempts to associate and to air their grievances; Count IV, that the use and threat of contempt power against plaintiffs by certain defendants is violative of their Fifth and Fourteenth Amendment rights and Count V, that the defendants, in collecting and releasing confidential financial information relating to the plaintiffs' earnings have invaded their rights to privacy.

Plaintiffs seek partial summary judgment on Counts I and II. The defendants move to dismiss the entire complaint on the grounds that the Court lacks subject matter jurisdiction; that the complaint fails to state a claim upon which relief can be granted; that this Court's intervention in the controversy is inappropriate; and, that plaintiffs have failed to exhaust their administrative remedies. Alternatively, they seek summary judgment.

The Court has considered the supporting memoranda, affidavits, exhibits, the argument of counsel and concludes that except for Count III, charging First Amendment infringements, the defendants are entitled to judgment dismissing the remaining counts of the complaint.

## THE BACKGROUND OF THE LITIGATION

Court reporters are full-time employees of the court system, appointed by and subject to the supervision of the Executive Officer and the judges for whom they perform services.[2] They are generally assigned to a branch of the court for specific time periods. Once assigned they are responsible to that court and their work schedule parallels and is subject to that court's schedule. They are required to perform according to the needs of the court and they are frequently subject to demanding and exacting assignments without advance notice and which cannot always be anticipated with certainty. Upon entering service they are given orientation on court

---

1. Under 11 D.C.Code § 1701, the Joint Committee has overall responsibility for general personnel policies in the District of Columbia court system including recruitment, removal, compensation and training. The members of the Committee are the Chief Judge and an associate judge of the D.C. Court of Appeals and the Chief Judge and two associate judges of the Superior Court.

2. 11 D.C.Code § 1727(a).

and court reporter rules,[3] overtime, attendance and leave policies, assignment procedures and other matters relevant to their responsibilities.

They are governed by the provisions of the Leave Act, and as full-time employees, are employed for a basic workweek of forty hours, 5 U.S.C. § 6101(a)(1). Authorized work in excess of forty hours a week or eight hours a day is subject to overtime compensation rates pursuant to § 5542 of the Act. The rates may not exceed 1 and ½ times the hourly rate of the basic pay for Step 1 of Level 10 of the General Schedule. The current maximum overtime rate under the Leave Act is less than that afforded under the Fair Labor Standards Act.

Superior Court reporters are hired at various annual salary levels ranging from $13,482 for a trainee to $16,255 for the highly experienced. They receive additional income from the sale of transcripts. The 1975 net average income from such sales was $5,265. Net incomes from that source ranged as high as $14,014 and $12,562. The combined average of reporters' incomes makes theirs the highest of any group of employees in that court or the District of Columbia Court of Appeals, with the exception of middle or upper management positions.[4]

Of major concern to the plaintiffs is the fact that fees may not be charged for transcripts produced at the request of a judge. Such transcripts, however, totalled less than 3 percent of all transcript pages produced in 1975.[5] The unverified complaint charges, upon information and belief, that some judges have made these transcripts available to persons who otherwise would be charged for them.

The Joint Committee on Judicial Administration requires each reporter to submit an annual statement of income from the sale of transcripts. These reports are submitted on a confidential basis, public release only authorized on the order of that Committee. Plaintiffs allege that, nonetheless, certain of these data appeared in a recently published newspaper article.

The reporters claim that they have attempted to air and to seek redress of their various grievances but have been generally frustrated and denied opportunity to do so by their immediate supervisors and the Executive Officer. On March 25, 1976, a revised grievances and appeals procedure was adopted by the Joint Committee for the court system which superseded prior procedures.[6]

Plaintiffs do not claim that they have utilized the recently implemented grievance procedures and that they have been found inadequate, lacking in fairness or biased against them. Nor do they challenge the manner in which the procedures were promulgated. Indeed, reporter Marilyn Berg alleges in her affidavit that an appeal from her discharge in May 1976, pursued under the grievance machinery, is currently under consideration. She points to no experience under the procedures which have deterred her efforts. Reporter Norma J. Houghton, president of the plaintiffs' association, details in her affidavit many problems associated with their working conditions, various complaints registered with her supervisors and contacts and conferences with the Superior Court Chief Judge in an attempt to resolve problems which have arisen over the years. However, the affidavit points to no effort of a reporter to pursue established grievance procedures which was fruitless or aborted. Edwin K. Putman generalizes in his affidavit that "[his] . . . efforts to work out differences with the court . . . have been rebuffed at every turn." He does refer to a May 1976 grievance under the new procedure when he sought redress from a supervisor's harassment. The grievance was considered and

---

3. Defendants' Exhibit "B". The Court Reporter Rules were promulgated March 9, 1973.

4. Defendants' Exhibit "A", Affidavit of Arnold M. Malech, Executive Officer of the District of Columbia Courts.

5. *Id.*

6. Defendants' Exhibit "C".

responded to by another supervisor who stated, ". . . you have exercised your administrative procedures and there is no further action to be taken. . . ." Putman then states that he was denied further review beyond the supervising court reporter. But his affidavit does not indicate the steps taken by him or who actually denied further review.[7]

## THE FAIR LABOR STANDARDS ACT CLAIM

A major issue presented in this litigation is whether the overtime pay provisions of the Fair Labor Standards Act, made applicable to the states by later amendments, relate to the court reporters of the Superior Court of the District of Columbia. The plaintiffs contend in Count I that they are entitled to overtime compensation computed under the provisions of the Act. The defendants do not agree.

The original Act required employers in covered enterprises to pay their employees at one and one-half times the regular rate of pay for hours worked in excess of 40 during a workweek, 29 U.S.C. § 207(a)(1). States and their political subdivisions were expressly excluded from coverage. By 1974 amendments, however, Congress extended the minimum wage and maximum hour provisions to all public employees employed by the states and their political subdivisions, 29 U.S.C. § 203(d), (x).

Those amendments were recently challenged by a coalition of individual cities and states and found unconstitutional, *National League of Cities et al. v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). The Supreme Court found that Congress had exceeded its authority under the Commerce Clause of Article I and that the amendments, as extended to the states and their political subdivisions, impermissibly interfered with employee relationships in areas of governmental functions and with

traditional aspects of state sovereignty. The defendants now urge that this ruling precludes consideration of the plaintiffs' FLSA cause of action by this Court.

The *National League of Cities* opinion was concerned with whether Congress may exercise that power with respect to essential decisions regarding the conduct of integral governmental functions and providing of governmental services which political subdivisions traditionally afford their citizens.

The defendants argue that since the FLSA defines "state" to include the District of Columbia,[8] that by reason of the recent ruling, the Act does not apply to the Superior Court of the District of Columbia.

While it may be too much to read into that opinion that the District of Columbia is a state for purposes of the FLSA, there are persuasive arguments against its applicability here. The 1973 D.C. Self Government and Reorganization Act,[9] for example, was enacted with the express purpose of granting D.C. residents the power of self government and to reorganize their local government with an eye toward ". . . reliev[ing] Congress of the burden of legislating upon essentially local District matters." 1 D.C.Code § 121(a). It is instructive that the Court observed in *National League of Cities* that the determination of policy relative to employer-employee relationships was traditionally a local matter. That same Act allows the District government to participate with the Federal government on the same basis as a state with respect to public employment services and claims filed by D.C. government employees under the Federal Employment Compensation Act.[10]

Certain provisions of the D.C. Court Reorganization Act of 1970 [11] further evidence Congress' intent to afford the District sovereignty in this area. Section 111 of that Act, incorporated at 11 D.C.Code § 102,

---

7. The affidavits of the three reporters were submitted in connection with the plaintiffs' motion for partial summary judgment.

8. 29 U.S.C. § 203(c).

9. Public Law 93–198, 87 Stat. 774 (1973).

10. 29 U.S.C. § 49b.

11. Public Law 91–358, 84 Stat. 473 (1970).

establishes the D.C. Court of Appeals as the "highest court of a State" in providing for U.S. Supreme Court review of state court decisions. Code sections 1721 through 1731 vest in the "state" court system complete authority to hire, dismiss, establish compensation rates and otherwise supervise nonjudicial court personnel including court reporters. Finally, in a recent Executive Report (No. 94–32), Senator Thomas Eagleton, Chairman of the Committee on the District of Columbia commented that

> . . . whenever possible deference [should] be given to local governmental decisions on local matters. In this connection, it should be emphasized that decisions respecting the Superior Courts are, generally speaking local ones, for the Superior Court is the "state" court for the District of Columbia . . . .[12]

The Court considers the above as persuasive and supportive of the defendants' contentions.

### THE CONSTITUTIONAL CLAIMS

■ With the exception of the Count III claim, the remaining constitutional claims asserted in Counts II and IV are vague, uncertain and overdrawn. In any event, they appear to be and should be susceptible to speedy and fair resolution within the framework of the available administrative processes of the Superior Court system.

In Count II, the allegation is made that the provision of transcripts of proceedings to a judge, at his request and without compensation, is a "taking" of property without just compensation and due process and violates plaintiffs' rights under the Fifth and Fourteenth Amendments. Reporters receive a fixed annual salary based upon their qualifications. They also earn additional income from sale of transcripts to parties and attorneys in litigation. They are not paid for transcripts supplied at the request of a judge. The magnitude of this "taking"

is described in the uncontroverted affidavit of Malech, who on basis of 1975 data, commented:

> No matter how calculated, the percentage of pages of transcript produced for the court as compared with the total numbers of pages produced is slightly more than two and one-half percent (2.64 percent) . . . .[13]

It should also be noted that several months before the plaintiffs brought this proceeding, a policy of restraint was urged of the Superior Court judges in their request for transcripts; they were further urged that such transcripts should not be made available to the parties in litigation.[14]

Count IV alleges an abuse of the contempt power and the threat of imprisonment against the plaintiffs by the Superior Court judges in violation of their Fifth and Fourteenth Amendment rights. The affidavits of Marilyn Berg and Norma J. Houghton refer to the use of the contempt power. The third paragraph of the Berg affidavit states that ". . . on more than one occasion [she has] been issued an order to show cause . . . for the failure to comply with request for reproduction of transcripts." It is unclear as to whether she refers to transcripts required by parties to litigation or whether her statement refers to transcripts requested by a judge. She does refer to a particular incident occurring in May, 1976. The third paragraph of the Houghton affidavit refers to a 1971 or 1972 conference, some four to five years before this litigation commenced, between several reporters and the Chief Judge of the Superior Court. The parties met to discuss working conditions and she states, "[O]ne of the several problems we were concerned about was the threat of . . . contempt . . . as we had seen attorneys and even court personnel 'stepped back.' We asked opinion and guidance on what to do if this happened to one of us.

---

12. Nomination of Charles W. Halleck To Be An Associate Judge of the Superior Court of the District of Columbia, Executive Rept. No. 94–32, 94th Cong., 2d Sess. (1976).

13. See Footnote 4, *supra.*

14. Plaintiffs' Exhibit "A", C. J. Greene's *Memorandum To The Judges And Court Reporters,* February 23, 1976.

We were told we would have to hire a lawyer like anyone else."

Considering the fact that there are more than 30 reporters assigned to the Superior Court, the two submitted affidavits scarcely support an allegation that contempt powers have been abused. The complaint is even less specific. While the Berg affidavit refers to "more than one occasion," the Houghton references are generalized and speculative in nature. A contempt order is subject to review upon timely application to the District of Columbia Court of Appeals. The plaintiffs have neither alleged nor indicated in any way that appellate relief is unavailable or inadequate and insufficient.

The Third Count charges First Amendment violations in that the supervisory court reporters and Executive Officer Malech have harassed, intimidated and threatened plaintiffs and have otherwise blocked their efforts to unionize and to seek redress of their complaints and grievances. The complaint and affidavits of the three reporters clearly detail their experiences with the supervisory personnel. The issue is brought into sharp focus and presents serious and unanswered questions.

At this posture of the proceedings and construing the complaint favorably to the plaintiff, it does not appear certain that as to Count III, the plaintiffs have failed to state a cause of action. The issue is not whether they will prevail but whether they should be granted an opportunity to proceed further and submit proof in support of their allegations. Of course, the nature and extent of what relief, if any, to be afforded will depend upon what is developed by the parties in the course of this litigation.

## ABSTENTION

Aside from the foregoing, however, it would appear that application of the abstention doctrine is clearly warranted to avoid needless conflict and intrusion in the management of the daily and routine affairs of the Superior Court. Under the recently restructured District of Columbia court system, that court is a completely independent judicial body. Since its jurisdiction is comparable to that of any state court, there is no compelling reason for this Court to become involved in its administrative processes.

The problems presented in this controversy relate to the sensitive and delicate employer-employee relationships of a trial court heavily burdened with an expanded case load arising from its increased jurisdiction. These developments have undoubtedly resulted in greater demands upon the court reporters and created problems which were not originally anticipated. A close reading of the complaint suggests that many of the problems detailed in that pleading as well as in the supporting affidavits and exhibits stem from what appears to be a fragile and an unwholesome relationship between the reporters and their three immediate supervisors. In substance, the reporters charge those supervisors with mismanagement and harassment. These problems should be capable of resolution through the administrative processes of that court or the available grievance procedures. But there is no clear indication that the grievance procedures have been exhausted or, indeed, even undertaken as to some complaints. Nor do the plaintiffs claim or assert that to pursue such a course would prove futile. It would be unwise for this Court to intrude into this problem area.

Application of the abstention doctrine is not without precedent when litigation involving the Superior Court has been considered in the District Court. In *Cohan v. Malech*, C.A. No. 2168–71 (D.D.C. Jan. 12, 1972), Judge Gesell applied the doctrine and dismissed the complaint of an aggrieved suspended Superior Court employee upon a finding that the Chief Judge is vested with broad administrative powers under the D.C. Code, the meaning and application of which should be determined by that court. He also found that the plaintiff's constitutional claims were tenuous and not urgent. Later, in *McNeily v. Greene*, C.A. No. 1596–71 (D.D.C. Dec. 18, 1972), Chief Judge Jones, citing *Cohan*, dismissed a complaint *sua sponte* on similar grounds. On appeal, the proceeding was remanded for a determina-

tion of jurisdiction. That determination was promptly made by the trial court; the doctrine of abstention was again applied, and the complaint was again dismissed. The plaintiffs' attempts to distinguish those precedents are not persuasive.

In summary, this Court concludes that for the reasons stated, the Fair Labor Standards Act is not a basis for jurisdiction; that the complaint here presented, other than the plaintiffs' First Amendment issue, fails to present a claim upon which relief can be granted; and, that otherwise this controversy is an appropriate one for this Court to apply the abstention doctrine as a matter of discretion and in the interest of proper judicial administration.

Counsel for the defendants shall present an appropriate order within five days.